IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GARLAND SYMPHONY ORCHESTRA ASSOCIATION INC, ET AL., § § § § | |
| Plaintiffs, § § | |
| v. § | Civil Action No. 4:24-CV-00739-O |
| § | |
| DALLAS-FORT WORTH PROFESSIONAL MUSICIANS ASSOCIATION, ET AL., § § § § § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Plaintiffs' Motion for Summary Judgment, Brief in Support, and Appendix (ECF Nos. 12–14), filed October 18, 2024; Defendant's Motion for Summary Judgment, Brief in Support, and Appendix (ECF Nos. 15–17), filed October 18, 2024; Plaintiffs' Response (ECF No. 18), filed November 15, 2024; and Defendant's Response (ECF No. 19), filed November 15, 2024. Having considered the briefing and applicable law, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment. Accordingly, Defendant's counterclaim is **DISMISSED** in its entirety.

**I.   BACKGROUND[1]**

This dispute stems from an arbitration award. Plaintiffs Garland Symphony Orchestra Association, Las Colinas Symphony Orchestra Association, and Symphony Arlington (collectively, the "Symphony") form a Texas nonprofit organization that facilitates and presents

---

[1] Unless otherwise indicated, all facts are taken from Plaintiffs' Complaint (ECF No. 1) and the Parties' summary judgment briefing. The Parties agree as to the material facts. *See* Pls.' Resp. 1, ECF No. 18 ("[T]he facts are not at issue.").

1

concerts in the Dallas-Fort Worth metroplex.  Defendant is a Union (the "Union") that represents musicians who contract with the Symphony.

The Symphony and the Union have been subject to a Master Agreement ("Master Agreement" or "CBA") since January 1, 2004.  This Master Agreement allows the Symphony's musical director to have absolute discretion over the number of musicians the Symphony contracts with and which musicians it engages for a particular orchestra season.  The Master Agreement includes a no-strike/no-lockout provision.  Specifically, this provision articulates that the Symphony "will not lockout the musicians" and the Union "will not strike."[2]  Pertinent to the instant action is Article 11 of the Master Agreement, which states in part:

> If the aggrieved party is dissatisfied with the decision, or if no decision is reached, the aggrieved party may submit the grievance to arbitration within three (3) days following the meeting set forth in Article 11.1B.
>
> . . . .
>
> Only a single grievance may be heard by the arbitrator at one time.
>
> . . . .
>
> The Arbitrator shall be empowered only to interpret the provisions of this Master Agreement as they apply to the particular case at issue.  The Arbitrator shall not have the authority to add to, subtract from, alter, amend, or change any term and/or provision of this Master Agreement in any way.[3]

A dispute arose concerning musician contracts the Symphony issued during the 2019–2020 orchestra season.  The Symphony first issued contracts to string musicians, and the Union instructed these musicians to accept and sign their individual contracts.  Later, the Symphony distributed contracts to non-string musicians.  However, the contracts the Symphony sent to the

---

[2] Pls.' App. Supp. Mot. Summ. J. Ex. A-1 (Master Agreement), App. 19, ECF No. 14.
[3] *Id.* at 16–17.

non-string musicians did not include specific language regarding the non-string musicians' compensation that the Symphony previously included in the string musicians' contracts.

As a result of this disparity, the Union filed a grievance on June 10, 2019. From June to August of 2019, the Symphony worked to gain a clear understanding of the Union's issues with the non-string musicians' contracts. In July 2019, the Symphony reissued the contracts, believing it had remedied the Union's issues. But the Union rejected the non-string musicians' contracts without explanation.

By August 2019, the Symphony's orchestra season was rapidly approaching. Because the issues surrounding the non-string musicians' contracts remained unresolved, the Symphony decided to proceed with a strings-only season. In November 2019—after the orchestra season was already underway—the Union and the Symphony finally agreed to a resolution as to the non-string musicians' contracts. By December 2019, the non-string musicians were rehearsing and performing with the Symphony. Unfortunately, though, these musicians missed the Symphony's October and November rehearsals and performances.

As a result of the Symphony's actions, the Union filed an Unfair Labor Practice ("ULP") Charge with the National Labor Relations Board ("NLRB") against the Symphony. Specifically, the Union accused the Symphony of the following:

> (1) violating the laws prohibiting employers from retaliating against employees engaged in union activities and protected/concerted activities, (2) making unilateral changes to the Master Agreement and musicians' contracts as described in the Master Agreement, (3) unlawfully bargaining directly with musicians without the union, (4) unlawfully interfering with the bargaining unit and union internal activities, (5) refusing to bargain regarding pay and other rights described in the Master Agreement, and (6) illegally locking out wind, brass, and percussion players [*i.e.*, non-string musicians] who have an executed contract for this season.[4]

---

[4] Pls.' App. Supp. Mot. Summ. J. Ex. A-2 (Memorandum of Understanding), App. 31, ECF No. 14.

On March 30, 2020, the NLRB reviewed the Union's allegations against the Symphony and decided to "defer[] further proceedings on the [C]harge in this matter to the grievance/arbitration process" outlined in the Master Agreement.[5] The next month, the Union presented the deferral grievance to the Symphony. Unable to settle the grievance, the Union and the Symphony later entered into a Memorandum of Understanding ("Memorandum of Understanding" or "Memorandum"), which laid out each Party's understanding of the single issue to be resolved by an arbitrator:

> (1)   *As Framed by the Union*: Whether the Company locked out the winds, brass, percussion, harp, and keyboard players during the 2019-20 [Symphony] season in violation of Art. 8, 11, 14 and/or 15.9 of the Master Agreement? If so, what is the appropriate remedy
>
> (2)   *As Framed by the [Symphony]*: Whether the [Symphony], during the 2019-20 season, locked out the wind, brass, and percussion players who have an executed contract in violation of Art. 8, 11, 14 and/or 15.9 of the Master Agreement? If so what is the appropriate remedy?[6]

The Parties framed the issue differently because the Symphony did not think that the harp and keyboard players were within the purview of the Union's grievance as they were not mentioned in the Union's original ULP charge. By contrast, the Union believed the harp and keyboards players were included among the non-string musicians. Importantly, the Memorandum explicitly excluded from arbitration any issue other than whether the Symphony violated the Master Agreement by "illegally locking out wind, brass, and percussion players [*i.e.*, non-string musicians] who have executed a contract for this season."[7]

The dispute proceeded to arbitration with Ruben R. Armendariz serving as the arbitrator. The Parties participated in a hearing before Arbitrator Armendariz from December 6 to 7, 2023,

---

[5] *Id.* at 32.
[6] *Id.* at 29.
[7] *Id.* at 31; *see id.* at 29 ("The Deferral Grievance does not include any other issue or claim outside of sub-paragraph six (6) of the Charge and the Stipulated Issue of Paragraph 8(c) above.").

and the Parties filed their post-hearing briefs by February 2, 2024. On May 11, 2024, Arbitrator Armendariz issued an award (the "Award"), which was in favor of the Union and stated the following:

> The grievance is sustained.
>
> The [Symphony] retaliated against the Union and musician players; by breaching and making unilateral changes to the Master Agreement and musicians individual contracts as described in the Master Agreement, by unlawfully bargaining directly with musicians without the union in their cover letter to the players, by refusing to bargain regarding pay and other rights described in the Master Agreement, and by partially locking out winds, brass, and percussion players (including harp and keyboard players) who have an executed contract for the 2019-20 season.
>
> The arbitrator Awards the non-string musicians (including winds, brass, percussion, harp, and keyboard players), back pay and benefits for the time that they were locked out of the 2019-20 season, and it is so Ordered.[8]

Following Arbitrator Armendariz's Award, the Symphony filed the instant action seeking to vacate and modify the Award insofar as it addressed issues other than whether the Symphony locked out the non-string musicians.[9] The Union counterclaimed for the enforcement of Arbitrator Armendariz's Award. Both Parties filed Motions for Summary Judgment, which are now ripe for this Court's review.

## II.   LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[8] Pls.' App. Supp. Mot. Summ. J. Ex. A-3 (Arbitrator's Award), App. 66, ECF No. 14.
[9] Pls.' Compl. ¶¶ 29–33, ECF No. 1.

327 (1986) (quoting FED. R. CIV. P. 1).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he substantive law will identify which facts are material." *Id.*  The movant must inform a court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact.  *Celotex*, 477 U.S. at 323.

A court must view the evidence in the light most favorable to the nonmovant.  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).  "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*  And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," a court must deny the motion for summary judgment.  *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment.  *Celotex*, 477 U.S. at 322.  In that situation, no genuine dispute of material fact can exist, as the failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

### B.  Standard of Review of Labor Arbitration Awards

"A court's review of arbitral awards interpreting labor agreements is 'exceedingly deferential.'"  *Delek Ref., Ltd. v. Loc. 202, United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFLCIO*, 891 F.3d 566, 570 (5th Cir. 2018) (citation

omitted). Even if an arbitrator "seriously erred in his fact finding or contract interpretation," a court will sustain the arbitrator's decision as long as it "is rationally inferable from the purpose of the CBA." *Id.* But an arbitrator's power is not limitless.

Courts will not defer to an arbitrator's decision that "exceeds the jurisdictional limits drawn in a CBA or acts contrary to its express provisions." *Id.* (citation omitted). Ignoring the plain language of the contract is a common example. *E.g.*, *id.*; *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Smith v. Transp. Workers Union, AFL-CIO Air Transp. Loc. 556*, 374 F.3d 372, 375 (5th Cir. 2004); *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989). A court may vacate an arbitration award that exceeds the scope of the arbitrator's authority. *Smith*, 374 F.3d at 375.

### III.  ANALYSIS

The Parties do not dispute the facts of the case. So, the Court is tasked with answering a purely legal question—whether Arbitrator Armendariz exceeded his authority. The Court concludes he did.

Under the Federal Arbitration Act, "a district court may vacate an award in limited circumstances, including 'where the arbitrators exceeded their powers.'" *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015) (quoting 9 U.S.C. § 10(a)(4)). "Arbitration is a matter of contract." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012) (citation omitted). "If a contract sets forth a limitation on the authority of an arbitrator, [a court] will vacate an award that ignores the limitation." *Horton Automatics v. Indus. Div. of Commc'ns Workers of Am.*, 506 F. App'x 253, 256 (5th Cir. 2013) (internal quotation marks and citation omitted). Indeed, "[a]n arbitrator exceeds his powers when he acts outside the limits of the authority granted to him by the arbitration agreement, such as deciding issues that

7

have not been submitted to him or acting contrary to express provisions of that agreement." *Prescott v. Northlake Christian Sch.*, 141 F. App'x 263, 271–72 (5th Cir. 2005) (footnotes omitted). "[L]imitations must be plain and unambiguous and . . . [a court] resolve[s] all doubts in favor of arbitration." *Horton Automatics*, 506 F. App'x at 256 (first and second alterations in original).

The Symphony explains the Parties authorized Arbitrator Armendariz to decide one issue—that is, whether the Symphony locked out the non-string musicians during the 2019–2020 orchestra season.[10] By the Symphony's logic, the Court should vacate and modify Arbitrator Armendariz's Award because it explicitly *included* five additional matters that the Parties explicitly *excluded* in the Memorandum of Understanding.[11] The Court agrees.

"Arbitration is a matter of contract; a party cannot be required to submit to arbitration unless it agreed in advance that the dispute would be arbitrated." *Smith*, 374 F.3d at 374. Here, the Parties do not dispute the enforceability of the Master Agreement and Memorandum of Understanding as valid contractual agreements. Thus, the Court reads the Master Agreement in tandem with the Memorandum. *See Savant v. APM Terminals*, No. CV 4:11-1980, 2013 WL 12099874, at *12 (S.D. Tex. Aug. 27, 2013), *aff'd*, 776 F.3d 285 (5th Cir. 2014) ("[T]he parties intended to be bound by the [Memorandum of Understanding] and therefore the [Memorandum of Understanding] should be read in tandem with the CBA.").

---

[10] Pls.' Br. in Supp. Mot. Summ J. 8–9, ECF No. 13; *See* Pls.' Compl. ¶ 33, ECF No. 1 ("[T]he Symphony respectfully requests that this Court issue a judgment vacating and setting aside the Award of Arbitrator Armendariz as to issues other than whether there was a lockout, [and] modifying the award accordingly."). As previously stated, the Parties framed the issue differently because the Symphony believed the harp and keyboard were not within the purview of the Union's grievance sent to arbitration while the Union believed otherwise. *See* Pls. Resp. 4, ECF No. 15. Regardless of their different framing, though, the Parties submitted only *one* issue before Arbitrator Armendariz.

[11] Pls.' Br. in Supp. Mot. Summ J. 9, ECF No. 13.

The language of both agreements is "plain and unambiguous." *Horton Automatics*, 506 F. App'x at 256. Importantly, the Master Agreement specifies that "[o]nly a single grievance may be heard by the arbitrator at one time."[12] Further, "[t]he Arbitrator shall not have the authority to add to, subtract from, alter, amend, or change any term and/or provision of this Master Agreement in any way."[13]

The Parties articulated the "single grievance" to be decided by Arbitrator Armendariz in the Memorandum of Understanding. Paragraph 8(c) of the Memorandum established the issue as whether the Symphony locked out non-string musicians during the 2019–2020 orchestra season "in violation of Art. 8, 11, 14 and/or 15.9 of the Master Agreement."[14] Importantly, paragraph 8(d) of the Memorandum made clear that "[t]he Deferral Grievance *does not include any other issue or claim* outside of sub-paragraph six (6) of the Charge and the Stipulated Issue of Paragraph 8(c) above (as resolved by the Arbitrator)."[15] Sub-paragraph six of the Union's ULP Charge alleged that the Symphony violated the Master Agreement by "illegally locking out wind, brass, and percussion players [*i.e.*, non-string musicians] who have executed a contract for this season."[16]

Rather than limit the Award only to the single issue prescribed by the Memorandum, Arbitrator Armendariz unilaterally ruled on numerous unrelated issues that were originally included in the Union's ULP Charge three years prior. The Memorandum explicitly limited Arbitrator Armendariz's authority to decide only one of the six issues included in the ULP Charge. Arbitrator Armendariz acted outside the express limitation defined in the Memorandum and thereby exceeded his authority. The Court must vacate and modify the Award accordingly. *See*

---

[12] Pls.' App. Supp. Mot. Summ. J. Ex. A-1 (Master Agreement), App. 16, ECF No. 14.
[13] *Id.* at 17.
[14] Pls.' App. Supp. Mot. Summ. J. Ex. A-2 (Memorandum of Understanding), App. 29, ECF No. 14.
[15] *Id.* (emphasis added).
[16] *Id.* at 31.

*Container Prods., Inc. v. United Steelworkers of Am., & its Loc. 5651*, 873 F.2d 818, 820 (5th Cir. 1989) ("[V]acation or modification of an arbitration award is clearly proper where the arbitrator has exceeded his authority."); *see also Horton Automatics*, 506 F. App'x at 257 ("The arbitrator's decision to ask and answer an additional question, therefore, exceeded his authority under the CBA and must be vacated.").

The Union advances two primary arguments to convince the Court to enforce the arbitration Award: The Symphony's "disagreement with the arbitrator's decision does not provide grounds for vacating the award," and the Award "draws its essence" from the Master Agreement and Memorandum of Understanding.[17]  Neither argument is persuasive.

To begin, the Union misstates the Symphony's position.  The Symphony does not merely disagree with the Award; rather, the Symphony's position is that Arbitrator Armendariz "*lacked the authority* to make those findings and award based on them in the first place."[18]  And, as stated above, the Court agrees with the Symphony's position.

Likewise, the Union's argument that the Award draws its essence from the CBA and Memorandum misconstrues the dispute at issue.  To be clear, the Supreme Court has explained that "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept."  *Misco*, 484 U.S. at 37–38.  Consequently, the Supreme Court has maintained that "[a]s long as the arbitrator's award '*draws its essence* from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate."  *Id.* at 36 (emphasis added) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).  Indeed, the Supreme Court has afforded great deference to an arbitrator

---

[17] Def's. Br. Supp. Mot. Summ. J. 18, ECF No. 16.
[18] Pls.' Resp. 4, ECF No. 18 (emphasis added).

such that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38.

The Fifth Circuit, though, later cabined the Supreme Court's deferential language in *Misco*: "We, however, construe the Supreme Court's language as an admonition concerning the *merits* of the controversy rather than any *jurisdictional* prerequisites imposed by the arbitration agreement." *Container Prods., Inc.*, 873 F.2d at 820 (emphasis added). The Fifth Circuit "ma[d]e this interpretation in light of the fact that vacation or modification of an arbitration award is clearly proper where the arbitrator has *exceeded his authority*." *Id.* (emphasis added).

The instant action implicates the Fifth Circuit's distinction in *Container Products*. Like *Container Products*, "[a]t essence in the case *sub judice* . . . is not the merits of the award, but the jurisdiction of the arbitrator." *Id.* at 819. Indeed, the Symphony challenges Arbitrator Armendariz's *authority* to decide multiple issues in his Award, not the *merits* of the Award.[19] And, like *Container Products*, "the arbitrator has, in fact, exceeded his authority." *Id.* at 820. As explained above, because the Memorandum plainly limited Arbitrator Armendariz's jurisdiction to the consideration of *only* whether the Symphony locked out non-string musicians, he exceeded his authority in unilaterally deciding any additional issues not articulated in the Memorandum.

In sum, the Court concludes that Arbitrator Armendariz lacked jurisdiction to decide any issue other than whether the Symphony locked out the non-string musicians during the 2019–2020 orchestra season.

---

[19] *Id.* at 8 ("At bottom, the Symphony's lawsuit is a challenge to the Arbitrator's authority in issuing his Award—not the merits of the factual and legal conclusions underlying the Award.").

11

IV.  **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Symphony's Motion for Summary Judgment (ECF No. 12) and **DENIES** the Union's Motion for Summary Judgment (ECF No. 15). Accordingly, the Union's counterclaim is **DISMISSED** in its entirety. Arbitrator Armendariz's May 11, 2024, Arbitration Award is **VACATED** as to all issues other than whether a lockout occurred during the 2019–2020 orchestra season and **MODIFIED** accordingly. Thus, the Symphony is hereby **DIRECTED** to comply with Arbitrator Armendariz's Award insofar as it pertains to the lockout issue. Separate final judgment shall issue.

**SO ORDERED** on this **7th day** of **March, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**